UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CARL WILSON,

                    Plaintiff,                              Case No. 2:05-cv-15

v.                                                         HON. GORDON J. QUIST

UNKNOWN LUOKKALA, et al.,

                    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Carl Wilson, an inmate at the Marquette Branch Prison (MBP), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Corrections Officer Luokkala, Case Manager Vicki Weisinger, R.N. Scott Ewers, Transportation Employee J. Johnson, Sergeant Bill Etten, and Corrections Officer Leece, all of whom are employed by the MDOC at MBP. Plaintiff is incarcerated as the result multiple convictions for assault with intent to commit murder, assault with intent to rob while armed, armed robbery, conspiracy to commit a legal act in an illegal manner, killing/seriously injuring a police animal, and felony firearm. Plaintiff is serving sentences of life in prison with the possibility of parole for the assault and robbery convictions, *see* MCL 750.83; MCL 750.89; MCL 750.529, ten years for the conspiracy conviction, three years for the killing/seriously injuring a police animal conviction, and two years for the felony firearm conviction. (*See* Plaintiff's offender profile, http://www.state.mi.us/mdoc/asp/otis2profile.asp?mdocNumber =199768.)

Plaintiff alleges that on October 23, 2003, he filed a § 1983 complaint in federal court.  On October 30, 2003, Plaintiff filed a motion for a temporary restraining order, as well as various other motions.  On November 3, 2003, Defendant Luokkala "destroyed" Plaintiff's cell while he was in the chow hall.  After Plaintiff entered his cell, Lieutenant Converse told Plaintiff to "cuff-up" because he was going to segregation for refusing a shakedown.  Plaintiff protested that he had just returned from dinner and had not refused any order.  Plaintiff was then escorted to segregation.  Plaintiff was asked to provide urine samples on November 3, 2003.  On the same date, Plaintiff received his property back from Officer Karkalla, but his Panasonic AM/FM radio was missing, as was some of his legal material.  On November 16 and 18, 2003, Plaintiff filed grievances regarding his missing property.

On November 4, 2003, Plaintiff gave a kite to Defendant Ewers, who had previously been sued by Plaintiff for failure to provide emergency care.  Plaintiff did not receive a reply to his kite.  On November 5, Plaintiff submitted a kite to Nurse Sandy.  Later that day, Plaintiff received a hearing on a major misconduct by Defendant Luokkala and was found guilty by Hearing Officer Mohrman.  Consequently, Plaintiff received 30 days loss of privileges.  In addition, Plaintiff automatically forfeited good time credits pursuant to MDOC Policy Directive 03.03.105 ¶ HHH, which increased the length of time Plaintiff must remain incarcerated prior to being eligible for parole.  On November 6, 2003, Plaintiff was reclassified to administrative segregation.

On November 6, 2003, Defendant Ewers told Plaintiff that he would not process any health care kites from Plaintiff unless he dropped the lawsuit.  Plaintiff later went on a dental callout in order to have a painful and infected wisdom tooth removed.  However, the dental assistant informed Plaintiff that he would only be receiving a scheduled cleaning.  Plaintiff asked to have his teeth cleaned on another time and to have his tooth pulled instead.  The dental assistant refused this

request, stating that she had never received any of Plaintiff's kites.  Plaintiff was told to return to his cell.  Later that evening, Defendant Ewers called Plaintiff a "N[1]," and told him that he hoped that Plaintiff rotted in his cell.

On November 7, 2003, Defendant Ewers again called Plaintiff a "N."  Later in the day, Plaintiff finally had his tooth pulled, after having suffered with pain and bleeding for a period of four days.  On November 13, 2003, Plaintiff received a Notice of Intent signed by Defendant Johnson, regarding his Panasonic radio.  On November 18, 2003, Defendant Weisinger conducted a hearing on the Notice of Intent, but would not allow Plaintiff to ask questions regarding his radio. Defendant Weisinger told Plaintiff that a wire was coming from the radio, but refused to show Plaintiff any evidence of the alteration.  Plaintiff stated that there was never any wire coming from his radio.  Defendant Weisinger responded by stating, "You can't have it anyways."  Defendant Weisinger told Plaintiff that he was on LOP (loss of privileges) and that the radio would just be sitting in the LOP closet anyway.

Plaintiff claims that Defendant Johnson broke the property seal on Plaintiff's radio outside Plaintiff's presence on November 3, 2003, in violation of MDOC policy.  Plaintiff claims that his radio had not been altered and that it was confiscated in violation of MDOC policy solely to retaliate against him.  On November 20, 2003, three days after Plaintiff was released to the general population, Plaintiff received a misconduct ticket from Officer Smith for shaking his cell door with his hands against the locking system while yelling obscenities.  When Plaintiff protested that Smith had the wrong cell, Officer Smith stated that he was going to make sure that Plaintiff went back to

---

[1]The court assumes that by "N," Plaintiff means "nigger."

segregation.  On November 24, 2003, Hearings Investigator Mohrman came to Plaintiff's cell to interview him on the misconduct.

On November 25, 2003, Defendant Etten came to interview Plaintiff on his grievance regarding the missing legal material.  During the interview, Defendant Etten stated that Plaintiff's accusations were false and the he was "intoxicated" and in possession of spud juice on November 3, 2003.  Plaintiff states that if this assertion was true, he would have received a misconduct for being intoxicated, but that no such misconduct was issued.  On December 9, 2003, Plaintiff was escorted from the yard for a shakedown.  When Plaintiff asked why he was being shaken down, Officer Debski stated, "you have a suit against us here, so every chance we get your [sic] going to have problems from staff."  Officer Debski further stated, "you filed paperwork against us people here, so longs [sic] you are here you are going to have problems until you leave."  Officer Alexander then grabbed Plaintiff by the buttocks with both hands and said, "boy what a nice package."  Plaintiff then returned to his cell.  Later that day, Plaintiff's cell was destroyed while he was at lunch.  On December 27, 2003, Plaintiff's cell was again destroyed while he was in the chow hall.  On December 29, 2003, Defendant Leece harassed Plaintiff before taking him out of his cell for showers.  Plaintiff told Defendant Leece to leave him alone, but Defendant Leece refused, calling Plaintiff names.  On December 30, 2003, Defendant Leece again harassed Plaintiff during rounds, calling Plaintiff names.

On January 5, 2004, Defendant Leece made racial remarks to Plaintiff, stating that Plaintiff was his "animal in a cage," and calling Plaintiff a "F B N."  Defendant Leece again subjected Plaintiff to harassment on January 8 and January 9, 2004.  In addition, Defendant Leece wrote a false major misconduct on Plaintiff on January 8, 2004 for covering his cell window.  On January 9, 2004, Defendant Leece wrote a false misconduct on Plaintiff for the same conduct.

- 4 -

Plaintiff was eventually found guilty of both these tickets, resulting in the loss of good time.  On January 15, 2004, Plaintiff's cell was destroyed while he was in the law library by Officer Larock, who stepped on Plaintiff's bed while wearing dirty boots.  Plaintiff complained about the situation to Sergeant Vizena, and showed him the cell.  On January 23, 2004, Defendant Leece again harassed Plaintiff by calling him a "N."

On February 2, 2004, Officer Lakenen harassed Plaintiff and destroyed his cell during a shakedown.  Defendant Leece then told Plaintiff to put all his property back into his footlocker.  Plaintiff then received a fabricated misconduct ticket for "disobeying a direct order."  Plaintiff sent letters of complaint to Assistant Deputy Warden Tretheway and the "Court of Appeals," and also filed a grievance concerning the behavior of Officer Lakenen.  On February 12, 2004, Plaintiff was advised to resubmit his grievance using additional pages, which Plaintiff did.  On February 26, 2004, Plaintiff spoke to Assistant Deputy Warden Tretheway, who told him that he had never received the complaint from Plaintiff.

On March 1, 2004, Sergeant Pusa interviewed Plaintiff on his most recent grievance, and on March 4, 2004, Plaintiff received the grievance on Officer Lakenen back showing that Lakenen lied about the state of Plaintiff's cell.  During lunch, Plaintiff asked Officer Marshall to look at his cell, who reported that Plaintiff's cell was a mess.  On March 5, 2004, during shower time, Defendant Leece keyed Plaintiff out of his cell and stated that Plaintiff was a no good "N" and that he should die in prison.  Plaintiff states that Defendants violated his rights under the First, Eighth and Fourteenth Amendments.  Plaintiff seeks both damages and injunctive relief.

Defendants move for summary judgment.  Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S.

317, 322-323 (1986).  If the movant carries the burden of showing there is an absence of evidence

to support a claim or defense, then the party opposing the motion must demonstrate by affidavits,

depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of

material fact for trial.  *Id.* at 324-25.  The nonmoving party cannot rest on its pleadings but must

present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R.

Civ. P. 56(e)).  The evidence must be viewed in the light most favorable to the nonmoving party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, any direct evidence offered

by the plaintiff in response to a summary judgment motion must be accepted as true.  *Muhammad*

*v. Close***,** 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir.

1994)).  However, a mere scintilla of evidence in support of the nonmovant's position will be

insufficient.  *Anderson*, 477 U.S. at 251-52.  Ultimately, the court must determine whether there is

sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.  *See also*

*Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other

evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co.*

*v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created

factual issue).

        Defendants Leece and Etten argue that the claims against them should be dismissed

without prejudice because plaintiff failed to properly exhaust his administrative remedies.  Pursuant

to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42

U.S.C. § 1983 must exhaust his available administrative remedies.  *See Porter v. Nussle*, 534 U.S.

516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001).  A prisoner must exhaust available

administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he

seeks in the state administrative process.  *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741;

*Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999).   In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 217-218 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91(2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 217-218.

MDOC Policy Directive 03.02.130 (effective Dec. 19, 2003) sets forth the applicable grievance procedures for prisoners in MDOC custody.   Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue with the staff member involved, unless prevented by circumstances beyond his or her control *Id.* at ¶ R.  If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process, and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶ X. The Policy Directive also provides the following directions for completing grievance forms: "[t]he issues shall be stated briefly.  Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ T (emphasis in original).  The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business days of the response, or if no response was received, within five days after the response was due. *Id.* at ¶¶ R, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ FF.  If the inmate is still dissatisfied with the Step II response, or

does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ R, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ HH. The Prisoner Affairs Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ U. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id.*

The Supreme Court held in *Woodford*, 548 U.S. at 92, that the PLRA exhaustion requirement requires "proper exhaustion." "Proper exhaustion" means that the plaintiff complied with the administrative agency's deadlines and "critical procedural rules," such as time limits for filing grievances. *Id.* at 2386-388. It is a precondition to any suit challenging prison conditions. *Id.* Therefore, following *Woodford,* if a plaintiff's grievance was not filed in a timely manner pursuant to the state's administrative rules, the plaintiff has not properly exhausted his administrative remedies and the claim is barred. The Supreme Court's recent decision regarding PLRA exhaustion, *Jones,* 127 S. Ct. at 922, did not modify this holding regarding "proper exhaustion." To the contrary, the Court drew upon the reasoning of *Woodford* when it struck down the Sixth Circuit's rule barring prisoners from bringing suit against any defendant whom the prisoner had not named in a Step I administrative grievance:

> In *Woodford,* we held that to properly exhaust administrative remedies prisoners must "complete the administrative review process in accordance with the applicable procedural rules," 548 U.S., at ___, 126 S.Ct. 2378 (slip op., at 5) – rules that are defined not by the PLRA, but by the prison grievance process itself. Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a

> grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion. As the MDOC's procedures make no mention of naming particular officials, the Sixth Circuit's rule imposing such a prerequisite to proper exhaustion is unwarranted.

*Jones*, 549 U.S. at 217-218.[2]   The Court in *Jones* also struck down the Sixth Circuit's total exhaustion rule, finding that a district court may proceed on a prisoner's exhausted claims and dismiss the unexhausted claims. *Id.* at 220-224.  Finally, the *Jones* Court overturned the Sixth Circuit's requirement that prisoners must specifically plead or demonstrate exhaustion in their complaints. *Id.* at 216.  Rather, the *Jones* Court held that a prisoner's failure to exhaust is an affirmative defense under the PLRA. *Id.*

Plaintiff never filed a grievance against defendant Etten.  Therefore, in the opinion of the undersigned, defendant Etten is entitled to dismissal without prejudice.  Plaintiff's grievance against defendant Leece was rejected because plaintiff failed to attempt to resolve the issue before filing his grievance.  Therefore, in the opinion of the undersigned, defendant Leece is entitled to dismissal without prejudice.

Plaintiff claims that Defendant Ewers violated his Eighth Amendment rights by causing Plaintiff to have to wait four days to have a tooth pulled.  Plaintiff states that this conduct resulted in unnecessary suffering, which included pain and bleeding.  The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes.  U.S. Const. amend. VIII.  The Eighth Amendment obligates prison authorities to provide medical care

---

[2]As "the MDOC's procedures make no mention of naming particular officials," the *Jones* Court held that "the Sixth Circuit's rule imposing such a prerequisite to proper exhaustion is unwarranted." *Jones*, 127 S. Ct. at 923.  The *Jones* Court, however, dealt with MDOC Policy Directive 03.02.130, effective November 1, 2000.  In that version of MDOC Policy Directive 03.02.130 there was no requirement that particular officials be named in a Step I grievance.

to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-05 (1976). A claim under the Eighth Amendment comprises an objective and subjective component: (1) a sufficiently grave deprivation and (2) a sufficiently culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Woods v. LeCureux*, 110 F.3d 1215, 1222 (6th Cir. 1997). The deliberate indifference standard applies to all claims challenging conditions of confinement, which include claims of inadequate medical care. *Wilson v. Seiter*, 501 U.S. 294, 303 (1991). For a medical claim, the Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle*, 429 U.S. at 104-05; *Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1995).

The deliberate indifference standard "describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health or safety; the official both must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and must draw the inference. *Id.* at 837. The reason for focusing on the official's mental attitude is to isolate those defendants who inflict punishment. *Id.* at 839.

To satisfy the objective component, the plaintiff must allege that the medical need at issue is "sufficiently serious." *Farmer*, 511 U.S. at 834. Not "every ache and pain or medically recognized condition involving some discomfort can support an Eighth Amendment claim." *Gutierrez v. Peters,* 111 F.3d 1364, 1372 (7th Cir.1997). In evaluating whether a medical need is sufficiently serious, the Ninth Circuit has considered the following factors: "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Sarah v. Thompson,* 109 Fed. Appx. 770, 771-772 (6th

Cir. 2004) (*citing McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir.1992), *overruled on other grounds, WMX Techs., Inc. v. Miller,* 104 F.3d 1133 (9th Cir.1997)).  Plaintiff failed to allege that the five day delay in the removal of his infected tooth affected his daily activities or resulted in chronic and substantial pain.   Nor did Plaintiff allege any facts showing that he suffered an impairment following the removal of his tooth as a result of the delay, or provide any medical evidence showing the detrimental effect of the alleged delay in medical treatment.   *Napier v. Madison County*, 238 F.3d 739, (6th Cir. 2001).  Consequently, it is recommended that the court dismiss Plaintiff's Eighth Amendment claim against Defendant Ewers.

Plaintiff alleges that he was subjected to racial slurs in violation of his constitutional rights. To establish a violation of the Equal Protection Clause, a prisoner must prove that a discriminatory intent or purpose against a disfavored class or excluded group was a factor in an action taken by prison officials. *See Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.,* 429 U.S. 252, 265 (1977). The occasional or sporadic use of racial slurs, although unprofessional and reprehensible, does not rise to a level of constitutional magnitude. *See Torres v. Oakland County*, 758 F.2d 147, 152 (6th Cir.1985). The petty exchanges of insults between a prisoner and guard do not amount to constitutional torts. *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir.1987) (per curiam).  Moreover, claims of abusive language and general harassment do not state a claim under the Eighth Amendment or the substantive due process clause.  *Ivey v. Wilson*, 832 F.2d 950 (6th Cir. 1987); *Ishaaq v. Compton*, 900 F. Supp. 935, 944 (W.D. Tenn., 1995); *Meadows v. Gibson*, 855 F. Supp. 223, 225 (W.D. Tenn., 1994).  In the opinion of the undersigned, this claim should be dismissed.

Further, it is recommended that the court dismiss Plaintiff's due process claim regarding the confiscation of his Panasonic AM/FM radio as barred by the doctrine of *Parratt v.*

*Taylor*, 451 U.S. 527 (1981), *overruled in part* by *Daniels v. Williams*, 474 U.S. 327 (1986).  Under

*Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has

no federal due-process claim unless the state fails to afford an adequate post-deprivation remedy.

If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due

process of law." *Parratt*, 451 U.S. at 537.  This rule applies to both negligent and intentional

deprivation of property, as long as the deprivation was not done pursuant to an established state

procedure.  *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984); *Mitchell v. Fankhauser*, 375 F.3d

477, 483-84 (6th Cir. 2004).  Because Plaintiff's claim is premised upon allegedly unauthorized

negligent acts of a state official, he must plead and prove the inadequacy of state post-deprivation

remedies.  *See Copeland v. Machulis*, 57 F.3d 476, 479-480 (6th Cir. 1995); *Gibbs v. Hopkins*, 10

F.3d 373, 378 (6th Cir. 1993).  Under settled Sixth Circuit authority, a prisoner's failure to sustain

this burden requires dismissal of his § 1983 due-process action.  *See Brooks v. Dutton*, 751 F.2d 197

(6th Cir. 1985).

Plaintiff has not alleged that state post-deprivation remedies are inadequate.

Moreover, numerous state post-deprivation remedies are available to him.  First, a prisoner who

incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for

compensation.  MICH. DEP'T OF CORR., Policy Directive 04.07.112 ¶ II(B) (effective Sept. 24, 1998).

Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State

Administrative Board.  MICH. COMP. LAWS § 600.6419; Policy Directive, 04.07.112 ¶ II(B).

Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract

claims "against the state and any of its departments, commissions, boards, institutions, arms, or

agencies."  MICH. COMP. LAWS § 600.6419(1)(a); *see Green v. State Corrections Dep't*, 192 N.W.2d

491 (Mich. 1971) (state liable for tortuous injury sustained by a sentenced convict at the Detroit

House of Correction).  The Sixth Circuit has specifically held that Michigan provides adequate post-deprivation remedies for deprivation of property.  *See Copeland*, 57 F.3d at 480.  Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property.  Plaintiff alleges that the confiscation of his recorder was a random and unauthorized act.  However, records attached by defendants establish that the radio was confiscated because it was altered with a wire coming out of the radio.  Despite plaintiff's claim of a random and unauthorized act, it is clear that the radio was properly confiscated.  Plaintiff received a hearing and the radio was determined to be altered.  Accordingly, it is recommended that Plaintiff's claim be dismissed.

Plaintiff claims that he was falsely convicted of numerous major misconducts.  He also appears to claim that evidence from other witnesses should have been explored instead of relying on a staff member's statement about the incident.  The Supreme Court has held that a claim for declaratory and injunctive relief, as well as for monetary damages, based upon allegations of deceit and bias on the part of the decision maker that necessarily implies the invalidity of the punishment imposed, is not cognizable under § 1983 until the conviction has been overturned.  *Edwards v. Balisok*, 520 U.S. 641, 648 (1997).  The Court relied upon *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), which held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid,* a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]."  *Edwards*, 520 U.S. at 646 (emphasis in original).

The Supreme Court recently revisited this issue in *Wilkinson v. Dotson*,544 U.S. 74 (2005), a case in which the plaintiffs claimed that the retroactive application of parole guidelines violated the Constitution's *Ex Post Facto* and Due Process Clauses.  The plaintiffs sought a new

- 13 -

parole eligibility review and a new parole hearing in accordance with the correct guidelines.  In

*Wilkinson*, the Court discussed the effect of its decisions in *Heck* and *Edwards*, as well as *Preiser*

*v. Rodriguez*, 411 U.S. 475 (1973) and *Wolff v. McDonnell*, 418 U.S. 539 (1974) on the issue:

> Throughout the legal journey from *Preiser* to *Balisok*, the Court has
> focused on the need to ensure that state prisoners use only habeas
> corpus (or similar state) remedies when they seek to invalidate the
> duration of their confinement – either *directly* through an injunction
> compelling speedier release or *indirectly* through a judicial
> determination that necessarily implies the unlawfulness of the State's
> custody.  Thus, *Preiser* found an implied exception to § 1983's
> coverage where the claim seeks – not where it simply "relates to" –
> "core" habeas corpus relief, *i.e.,* where a state prisoner requests
> present or future release. Cf. *post,* at ----5 (KENNEDY, J., dissenting)
> (arguing that *Preiser* covers challenges that "relate ... to" the duration
> of confinement).  *Wolff* makes clear that § 1983 remains available for
> procedural challenges where success in the action *would not*
> *necessarily* spell immediate or speedier release for the prisoner. *Heck*
> specifies that a prisoner cannot use § 1983 to obtain damages where
> success *would necessarily* imply the unlawfulness of a (not previously
> invalidated) conviction or sentence. And *Balisok*, like *Wolff*,
> demonstrates that habeas remedies do not displace § 1983 actions
> where success in the civil rights suit would not necessarily vitiate the
> legality of not previously invalidated) state confinement. These cases,
> taken together, indicate that a state prisoner's § 1983 action is barred
> (absent prior invalidation)--no matter the relief sought (damages or
> equitable relief), no matter the target of the prisoner's suit (state
> conduct leading to conviction or internal prison proceedings)--*if*
> success in that action would necessarily demonstrate the invalidity of
> confinement or its duration.

*Wilkinson*, at *Dotson*, 544 U.S. at 81.  The Court then concluded that because the plaintiffs' claims

did not necessarily imply the invalidity of their convictions or sentences, they could present these

claims in the context of a § 1983 action.  *Id.*

Thus, where a prisoner's claim of unfair procedures in a disciplinary hearing

necessarily implies the invalidity of the deprivation of good-time credits, his claim is not cognizable

under § 1983.  *Wilkinson*; *Edwards*, 520 U.S. at 646.  *See also Muhammad v. Close*, 540 U.S. 749

(2004) (holding that the *Heck-Edwards* bar applies to prison misconduct challenges only when good-time credits are implicated).

Plaintiff claims that the findings of guilt for the misconducts are false.  Under Michigan law, good-time credits are automatically forfeited for the month that the guilty finding is made.  *See* MICH. COMP. LAWS § 800.33; MICH. DEP'T OF CORR., Policy Directive 03.03.105, ¶ HHH (effective November 1, 2002).  In addition, the warden may order forfeiture of previously accumulated credits in cases.  MICH. COMP. LAWS § 800.33; Policy Directive 03.03.105, ¶ HHH. Under Michigan law, a prisoner may seek a rehearing of a decision made by the Hearings Division within thirty calendar days after a copy of the Misconduct Report is received.  MICH. COMP. LAWS § 791.254; Policy Directive 03.03.105, ¶ DDD.  Upon denial of his motion for rehearing, a prisoner may file an application for leave to appeal in the state circuit court.  *See* MICH. COMP. LAWS § 791.255(2); Policy Directive 03.03.105, ¶ GGG (concerning appeal).  If he is not successful, he may then seek to overturn the convictions by bringing a federal habeas corpus action.[3]  Accordingly, because Plaintiff has not shown that his convictions have been invalidated, his due process claims regarding the misconduct convictions are not presently cognizable.

Furthermore, Plaintiff's complaint, as well as the documents attached to the complaint, establish that if Plaintiff had a right implicating the due process protections of the Constitution, Plaintiff received due process of law.  In all cases where a person stands to be deprived

---

[3]A misconduct conviction results in the loss of good-time credits, which is equivalent to a loss of a "shortened prison sentence."  *See Wolff v. McDonnell*, 418 U.S. 539, 556-57 (1974).  A challenge to a "shortened prison sentence" is a challenge to the fact or duration of confinement that is properly brought as an action for habeas corpus relief.  *See Preiser v. Rodriguez*, 411 U.S. 475 (1973).  However, a prisoner must exhaust available state remedies before bringing a habeas corpus action, which would include appealing the conviction through the state courts.  *See* 28 U.S.C. § 2254(b)(1).

of his life, liberty or property, he is entitled to due process of law.  This due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false.  *Zinermon v. Burch*, 494 U.S. 113, 127-28(1990).  The Due Process Clause does not guarantee that the procedure will produce a correct decision.  "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process."  *Martinez v. California*, 444 U.S. 277, 284, n.9 (1980).  "[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*."  *Zinermon*, 494 U.S. at 125(1990) (emphasis in original). Further, an inmate has no right to counsel in disciplinary proceedings.  *Wolff v. McDonnell*, 418 U.S. 539, 569-70 (1974); *Franklin v. Aycock*, 795 F.2d 1253, 1263 (6th Cir. 1986).

Plaintiff claims that defendants retaliated against him.  Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394.  Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff asserts that he engaged in protective conduct by filing an Eighth Amendment lawsuit against MDOC employees. Only defendant Ewers was named as a defendant in that lawsuit and he was never served with a complaint. The other defendants were not involved and attest that they had no knowledge of the lawsuit. Plaintiff has failed to show that an ordinary person would not engage in future protected conduct as a result of the confiscation of an altered radio. Defendants have established a valid reason for the confiscation of the radio and plaintiff has failed to show that the valid confiscation of his radio was causally connected to his prior lawsuit or grievance filings. In the opinion of the undersigned, the retaliation claim should be dismissed.

Defendants argue that they are entitled to qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

- 17 -

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established.

*Turner*, 119 F.3d at 429.  These are both purely legal questions.  The immunity issue should not be

resolved if there are factual disputes on which the issue of immunity turns such that it cannot be

determined before trial whether the defendants' conduct violated clearly established rights.  *Hall v.*

*Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991).  In the opinion of the undersigned, plaintiff cannot

show that defendants violated any of his clearly established rights.

        Plaintiff filed a motion for a preliminary injunction and temporary restraining order

to require the MDOC to accept service of his summons and complaint on defendant Etten and

defendant Ewers or alternatively any other relief available to him so that he could perfect service on

these defendants.  Plaintiff failed to exhaust his grievance remedies against defendant Etten so he

is not entitled to any relief to perfect service on defendant Etten.  In the opinion of the undersigned,

plaintiff cannot support his claims and all of his claims should be dismissed.

        Accordingly, it is recommended that Defendants' Motion for Summary Judgment

(Docket #35) be granted dismissing Defendants Etten and Leece without prejudice and the remaining

defendants with prejudice.[4]  It is further recommended that Plaintiff's motion for a temporary

restraining order and preliminary injunction (Docket #42) be denied.

        Further, if the court adopts this recommendation the court should decide that an

appeal of this action would not be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See*

*McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the court

grants defendants' motion for summary judgment, the court can discern no good-faith basis for an

appeal.  It is recommended that should the plaintiff appeal this decision, the court assess the $455

appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless plaintiff is

---

[4]Defendants Etten and Ewers were never served with a summons and complaint.

barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).  If he is barred, he should be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).


 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE


Dated:   January 22, 2009